Jennette CARTER, Plaintiff-Appellant,

v.

SUPERMARKETS GENERAL CORPORATION, Defendant-Appellee.

No. 81–1810.

United States Court of Appeals, First Circuit.

Argued June 3, 1982.

Decided Aug. 6, 1982.

---

John E. Pearson, with whom Fein, Schulman, Resnic & Frankl, Springfield, Mass., was on brief, for plaintiff-appellant.

Kitt Sawitsky, with whom John F. Adkins, John J. Loftus, and Bingham, Dana & Gould, Boston, Mass., were on brief, for defendant-appellee.

Before CAMPBELL and BOWNES, Circuit Judges, and PETTINE,* District Judge.

BOWNES, Circuit Judge.

Jennette Carter appeals from the district court's grant of summary judgment against her on her claim under 42 U.S.C. § 1981[1] against Supermarkets General Corporation (SGC) and from a separate order of the district court denying her motion to add a Title VII claim, 42 U.S.C. § 2000e et seq., to her complaint.

---

* Of the District of Rhode Island, sitting by designation.

1. 42 U.S.C. § 1981 provides as follows:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

SGC employed Carter as a bakery clerk at its Pathmark store in Springfield, Massachusetts, from October 23, 1972, until April 12, 1973. Carter resigned on April 12, allegedly as a result of race and sex discrimination, although SGC contends that she resigned because she had recently been injured in an automobile accident and that she had earlier received several warnings about unsatisfactory work performance. Approximately one year later, sometime in April 1974, Carter returned to the store to inquire about reemployment. The manager told her that there were no jobs available. Carter claims that she later learned that the Pathmark store was hiring more employees and that she was not rehired on grounds of race and sex.

On January 13, 1975, Carter filed charges of discrimination with the Massachusetts Commission Against Discrimination (MCAD), and she filed similar charges the next day with the Equal Employment Opportunity Commission (EEOC). There is no record of what, if any, action MCAD took. The EEOC issued Carter a right-to-sue letter on June 15, 1975. On August 8, 1975, Carter (together with her late husband) filed a complaint in federal district court alleging violations of the Civil Rights Act of 1870, 42 U.S.C. § 1981, and of the Equal Pay Act, 29 U.S.C. § 206(d). Carter sought class certification of her suit, but the case was eventually reduced to her individual claims. Little occurred in the case after August 1975 until July 1981, when SGC moved for summary judgment on statute of limitations grounds on both the § 1981 and Equal Pay Act claims. On August 24, 1981, Carter moved to amend her complaint by adding a Title VII claim and by adding an allegation of willfulness to the Equal Pay Act claim (which would have given her the benefit of a longer statute of limitations). The district court denied Carter's motion.[2] Carter appealed this ruling, but we rejected

the appeal because it was not taken from a final order. The district court heard the summary judgment motion on November 2, 1981. The court ruled orally that the six-month period contained in Mass.Gen.Laws Ann. ch. 151B, § 5[3] was the limitations period applicable to Carter's § 1981 claim and that this period had run before Carter filed her complaint. The court also rejected the Equal Pay Act claim as time-barred.[4]

■ We examine first whether the § 1981 claim was barred by the statute of limitations. Section 1981 not having its own limitations period, we look to the most analogous Massachusetts statute of limitations. 42 U.S.C. § 1988; *Runyon v. McCrary*, 427 U.S. 160, 179–82, 96 S.Ct. 2586, 2598–2600, 49 L.Ed.2d 415 (1976); *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). In three recent opinions, we have considered the appropriate Massachusetts statute for federal civil rights claims brought under 42 U.S.C. § 1983. In all three cases we found that the general contract and tort statutes of limitations in Massachusetts, Mass.Gen. Laws Ann. ch. 260, §§ 2, 2A (six years and three (formerly two) years, respectively), did not apply to the claims but that more specific statutes did. In the first, *Burns v. Sullivan*, 619 F.2d 99, 105–08 (1st Cir.), *cert. denied*, 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980), we held that Mass.Gen. Laws Ann. ch. 151B, § 5, which provides a six-month period, was applicable to a policeman's claim of race discrimination. A six-month period was also applied in *Hussey v. Sullivan*, 651 F.2d 74, 76 (1st Cir. 1981) (per curiam), *aff'g* 498 F.Supp. 594 (D.Mass.), to a policeman's claim of political discrimination, although there we looked to Mass.Gen. Laws Ann. ch. 31, § 42, which deals with Massachusetts civil servants. Finally, in

---

**2.** Carter appeals only from the district court's ruling as to Title VII.

**3.** Mass.Gen.Laws Ann. ch. 151B, § 5 provides for the bringing of discrimination complaints before the Massachusetts Commission Against Discrimination. It requires: "[a]ny complaint

filed pursuant to this section must be so filed within six months after the alleged act of discrimination."

**4.** Carter appeals only from the decision as to § 1981.

*Holden v. Commission Against Discrimination*, 671 F.2d 30, 33–34 (1st Cir. 1982), we held that equal protection and free speech claims by an MCAD employee (a Commonwealth employee) were covered by *Burns* and *Hussey*, respectively, and that the limitations period for a claim of due process violation was also to be found in Mass.Gen. Laws Ann. ch. 31, § 42.

■■■ We believe that these decisions are helpful here, even though this case is different in two respects; it involves a § 1981, not a § 1983, claim, and the plaintiff is a private employee, not a public employee. In applying a state statute of limitations to a federal claim, we examine the exact nature of the federal claim, and distinctions between federal statutes, such as between § 1981 and § 1983, are not necessarily important. Sections 1981 and 1983 both attempt to protect a broad range of civil rights, certainly including the right claimed by Carter to employment free from race and sex discrimination. The problems of state statutes of limitations for § 1981 and § 1983 have long been treated similarly and often interchangeably. *Compare Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (§ 1981), *and Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (§ 1981), *with Board of Regents v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980) (§ 1983), *and Chardon v. Rivera Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) (§ 1983). In this case, the same statute of limitations should apply to Carter's equal protection claim under § 1981 as would apply to such a claim under § 1983, unless the state statute distinguishes between private

employers and the Commonwealth. This brings us to the second problem in applying the *Burns-Hussey-Holden* trilogy here, the fact that it dealt only with public employees. The Massachusetts statute we held applicable to equal protection claims under § 1983 does not, however, make a public-private distinction. Moreover, in *Burns v. Sullivan*, 619 F.2d at 107, we adverted to policies militating against allowing public employees a limitations period longer than six months, and we think that similar policies—preventing employees from foregoing state administrative proceedings in favor of a later federal court action, which would have the unfortunate effect of transforming federal courts into personnel agencies— apply to private employers as well. We conclude that, like the *Burns, Hussey,* and *Holden* plaintiffs, private employees alleging equal protection violations in employment under 42 U.S.C. § 1981 are not subject to Massachusetts' general contract and tort statutes of limitations when Massachusetts has a more specific statute.

■■■ Before we can conclude that Mass. Gen.Laws Ann. ch. 151B, § 5 applies to Carter's equal protection claim, however, we must consider a question not raised in the previous cases, the applicability of Mass. Gen.Laws Ann. ch. 151B, § 9.[5] Section 9 also deals with employment discrimination specifically and provides a two-year statute of limitations for suits brought in a Massachusetts court. Together § 5 and § 9 contemplate a dual remedial process. Section 5 applies to complaints filed with MCAD, and there is a right of review of the MCAD's decision in Massachusetts superior court, Mass.Gen.Laws Ann. ch. 151B, § 6.[6] Sec-

---

**5.** Mass.Gen.Laws Ann. ch. 151B, § 9 establishes an alternate remedy whereby one who brings a timely complaint before the MCAD may elect during the pendency of the agency proceeding to bring a suit in court, *see* note 7, *supra.* Section 9 goes on to provide that "[n]o action under this section shall be filed later than two years after the alleged unlawful practice occurred."

**6.** Mass.Gen.Laws Ann. ch. 151B, § 6 provides in relevant part as follows:

Any complainant, respondent or other person aggrieved by such order of the commission may obtain judicial review thereof, and the commission may obtain an order of court for its enforcement, in a proceeding as provided in this section. Such proceeding shall be brought in the superior court of the commonwealth within any county wherein the unlawful practice which is the subject of the commission's order occurs or wherein any person required in the order to cease and desist from an unlawful practice or to take

tion 9 authorizes suits to be brought in a superior or probate court after an MCAD complaint is filed. Thereafter, while the MCAD proceedings are pending, one has two years to elect to go to court—but this election can be made only if a complaint has been filed before the MCAD within six months after the implicating act. A § 9 action terminates any complaint pending before the MCAD.[7] Once the MCAD makes a final decision, however, relief under § 9 is presumably foreclosed, and a party has recourse only under § 6.

Assuming that § 9, the statute of limitations provision of which took effect on October 3, 1974,[8] applies retroactively,[9] we do not believe that it applies to Carter's § 1981 claim as the most analogous Commonwealth statute. By January 13, 1975, when Carter filed her complaint with MCAD, more than six months had elapsed from the time of the last alleged act of

discrimination, the refusal to rehire Carter in April 1974. Mass.Gen.Laws Ann. ch. 151B, § 5. The MCAD complaint with respect to this incident was therefore time-barred, and by the same token the incident could not be the proper subject of a separate state court proceeding allowed in § 9—as, indeed, the subsequent dismissal of the MCAD complaint, presumably for untimeliness, clearly showed. The two-year period could be of arguable applicability only had the MCAD complaint itself been timely filed within six months. The analogous statute of limitations in this case, then, is the six-month period applicable to MCAD complaints, not the two-year period applicable to judicial actions. Carter's § 1981 claim is therefore time-barred because the last possible act of discrimination, the refusal to rehire, occurred well over six months before Carter filed suit in federal court.[10]

7.  Mass.Gen.Laws Ann. ch. 151B, § 9 provides in relevant part as follows:

Any person claiming to be aggrieved by a practice made unlawful under this chapter or under chapter one hundred and fifty-one C, or by any other unlawful practice within the jurisdiction of the commission, may, at the expiration of ninety days after the filing of a complaint with the commission, or sooner if a commissioner assents in writing, bring a civil action for damages or injunctive relief or both in the superior or probate court for the county in which the alleged unlawful practice occurred or in the housing court within whose district the alleged unlawful practice occurred if the unlawful practice involves residential housing. The petitioner shall notify the commission of the filing of the action, and any complaint before the commission shall then be dismissed without prejudice, and the petitioner shall be barred from subsequently bringing a complaint on the same matter before the commission. An aggrieved person may also seek temporary injunctive relief in the superior, housing or probate court within such county at any time to prevent irreparable injury during the pendency of or prior to the filing of a complaint with the commission.

other affirmative action resides or transacts business.... A proceeding under this section when instituted by any complainant, respondent or other person aggrieved must be instituted within thirty days after the service of the order of the commission.

8.  The amended statute was enacted on July 5, 1974, and, under Mass.Const.Amend. Art. 48, Def., Pt. 6, it took effect 90 days later.

9.  This assumption is not unjustified. Massachusetts follows the general rule that, absent clear legislative intent, statutes affecting substantive rights are prospective, whereas statutes affecting procedure or remedies may be retroactive. *E.g., Austin v. Boston Univ. Hosp.,* 372 Mass. 654, 363 N.E.2d 515, 517 (1977); *Palmer v. Selectmen of Marblehead,* 368 Mass. 620, 335 N.E.2d 349 (1975); *Hein-Werner Corp. v. Jackson Industries, Inc.,* 364 Mass. 523, 306 N.E.2d 440, 442–43 (1974). Because a statute of limitations does not generally affect the nature of a defendant's liability, we may treat it as retroactive. *But see* note 11 *infra.*

10.  An alternative ground exists for the time bar against the § 1981 claim based on Carter's resignation. When the amended § 9 was enacted and took effect in 1974, the applicable six-month statute of limitations, Mass.Gen.Laws Ann. ch. 151B, § 5, had already run on the April 12, 1973 resignation. Where a cause of action has been extinguished by a time bar, a new statute of limitations will not be applied retroactively so as to revive it. *See Dirksen v. Hynes & Howes Ins. Counselors, Inc.,* 423 F.Supp. 1290, 1293–94 (S.D.Ia.1976); *cf. City Council of Waltham v. Vinciullo,* 364 Mass. 624, 307 N.E.2d 316, 319 (1974) (procedural statute applied retroactively if case has not already passed stage to which statute pertains).

The second issue is whether the district court abused its discretion in denying Carter's motion to add a Title VII claim to her complaint. Under Fed.R.Civ.P. 15(a), leave to amend a pleading "shall be freely given when justice so requires."

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court[.]

*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). With respect to undue delay,

> [w]hile courts may not deny an amendment solely because of delay and without consideration of the prejudice to the opposing party, . . . where . . . a considerable period of time has passed between the filing of the complaint and the motion to amend, courts have placed the burden upon the movant to show some "valid reason for his neglect and delay." *Freeman v. Continental Gin Co.*, 381 F.2d 459, 469 (5th Cir. 1967).

*Hayes v. New England Millwork Distributors, Inc.*, 602 F.2d 15, 19–20 (1st Cir. 1979) (citations omitted in part); *accord, Vargas v. McNamara*, 608 F.2d 15, 19 (1st Cir. 1979). In the case at bar, Carter waited six years after filing her complaint to seek this amendment, and she attributes the delay to inadvertence and "clerical error." As we suggested in *Vargas v. McNamara*, 608 F.2d at 19, this explanation is not enough; counsel can be expected to check their work promptly. Carter's delay was almost entirely her own doing, in contrast to a case such as *Farkas v. Texas Instruments, Inc.*, 429 F.2d 849, 851 (1st Cir. 1970), where amendment after delay was acceptable when much of the delay was caused by the court. In addition, Carter's motion was made only after SGC sought summary judgment, *cf. Woodson v. Fulton*, 614 F.2d 940, 942–43 (4th Cir. 1980) (denial of motion to amend was proper where made by plaintiff after defendant had moved for summary judgment and where plaintiff had known for some time of possible additional claim); *Eisenmann v. Gould-National Batteries, Inc.*, 169 F.Supp. 862, 863–64 (E.D.Pa.1958) (motion to amend denied where motion made after opponents had moved for summary judgment and two years after action commenced, no new evidence having emerged). Finally, counsel for SGC has represented that the delay has caused prejudice because the Pathmark store in Springfield has been closed for some years and witnesses have dispersed. In view of Carter's extraordinarily long and essentially unexplained delay, we conclude that the district court acted within its discretion in denying Carter's motion to amend.

*The decisions of the district court are affirmed.*